NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JULIA D. , | ) | |
| | ) | Supreme Court No. S-15053 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-12-00002 CN |
| v. | ) | |
| | ) | |
| STATE OF ALASKA, | ) | MEMORANDUM OPINION |
| DEPARTMENT OF HEALTH & | ) | AND JUDGMENT* |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | No. 1487 - April 2, 2014 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Eric Smith, Judge.

Appearances: Deborah Burlinski, Burlinski Law Office, LLC, Anchorage, for Appellant. Miranda L. Strong, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

1.    Julia D.[1] appeals the superior court's termination of her parental rights to her daughter Amy. Julia argues that the trial court (1) erred in finding that Amy

---

\*    Entered under Appellate Rule 214.

[1]    Pseudonyms are used to protect the privacy of the family.

is not an Indian child as defined in the Indian Child Welfare Act (ICWA),[2] (2) erred in finding that the Office of Children's Services (OCS) had probable cause to remove Amy from Julia's custody shortly after the child's birth, (3) erred in finding that Amy was a child in need of aid, (4) erred in finding that OCS had made reasonable efforts at reunification, and (5) violated AS 47.14.100(e)(3) by failing to place Amy with her maternal grandparents. We find no merit to Julia's challenges and therefore affirm the orders of the superior court.

2. We considered Julia's parental rights to her son Jackson in an earlier appeal.[3] In our memorandum opinion affirming the termination of Julia's parental rights in that case, we reviewed her history of domestic violence, "sometimes as a victim and other times as a perpetrator."[4] We noted her "long history of abusing substances, including alcohol, marijuana, cocaine, prescription pain pills, methamphetamine, and heroin," and the fact that "by July 2011 [she] was using heroin daily."[5] We recited OCS's various efforts to address Julia's problems of substance abuse and domestic violence and Julia's failure to participate in recommended treatment or to otherwise comply with her case plan.[6] We affirmed the trial court's finding that OCS's efforts to

---

[2] 25 U.S.C. §§ 1901-1963 (2006).

[3] *See Julia D. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, Mem. Op. & J. No. 1467, 2013 WL 5314609 (Alaska, Sept. 18, 2013).

[4] *Id.* at *1.

[5] *Id.*

[6] *Id.* at *1, * 4.

reunify Julia with Jackson were reasonable up to the time of the trial in February 2012 that resulted in termination of her parental rights to her son.[7]

3.	Amy had been born a month earlier, in January 2012. OCS removed her from Julia's custody shortly after birth because both mother and daughter had tested positive for opiates. Also cited in the adjudication petition as a reason to remove Amy from Julia's custody was Julia's failure to comply with the existing case plan, which required her to complete a substance abuse assessment, participate in drug screening, complete domestic violence education classes, and obtain appropriate, safe housing for her children.

4.	Following Amy's removal, OCS established a visitation schedule for Julia, but Julia dropped out of contact after only a few visits. Julia's OCS social worker repeatedly attempted to locate her over the following months without success. In April 2012, OCS petitioned to terminate Julia's parental rights to Amy. Julia resurfaced shortly before the termination trial in September 2012; she had been in the company of Jack, Amy's father, who was hiding out from law enforcement.

5.	Julia testified at the termination trial, as did Jennifer Dale, Julia's OCS social worker. The trial court also incorporated the record, evidence, and findings from the termination trial regarding Jackson. In its written findings entered after trial, the court found that Amy was a child in need of aid, that Julia had not remedied the conduct or conditions that placed Amy in need of aid, that OCS had made reasonable efforts to reunify Julia with Amy, and that termination of Julia's parental rights was in Amy's best interests.

---

[7]	*Id.*

6. On appeal, Julia argues that the trial court erred when it found that Amy is not an Indian child for purposes of ICWA. ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."[8] The burden of producing evidence that a child meets this definition is on the parent.[9] Julia produced documentary evidence after trial that Amy was a direct descendent of a tribal member,[10] Amy's great-great-grandmother, and because of that lineage was eligible for tribal membership. But ICWA requires both that the child be eligible for tribal membership and that a parent already be a tribal member; Julia presented no evidence of the latter. The superior court's finding that Amy is not an Indian child under ICWA thus was not clearly erroneous.

7. Julia also challenges the superior court's finding that Amy was a child in need of aid. The superior court found by clear and convincing evidence that Amy was a child in need of aid pursuant to AS 47.10.011(1) (abandonment), (2) (incarceration and inadequate arrangements for care), (10) (substance abuse), and (11) (mental health issues). A finding under only one of these subsections is sufficient to support a finding that a child is in need of aid.[11] In our earlier memorandum opinion we detailed Julia's problems with substance abuse and found "no error in the trial court's findings, by clear and convincing evidence, that Julia's substance abuse caused Jackson

---

[8] 25 U.S.C. § 1903(4).

[9] *Bruce L. v. W.E.*, 247 P.3d 966, 977 (Alaska 2011).

[10] 25 U.S.C. § 1903(4).

[11] *Casey K. v. State, Dep't of Health & Soc. Servs.*, 311 P.3d 637, 643 n.14 (Alaska 2013) ("[O]nly one statutory basis is required for a CINA finding.").

to be a child in need of aid and that Julia did not remedy her conduct in time for Jackson to be safely returned to her custody."[12] The trial court made similar findings in this case, demonstrating that very little had changed since that earlier termination trial. We have reviewed the trial court's findings and the evidence on which they rely and see no clear error.

8. Julia argues that it was error for the superior court to count against her the four months in which she failed to comply with her case plan or make contact with Amy because she was on the run from the law with Jack; she contends that it was Jack's "manipulative and controlling behavior" that prevented her from maintaining contact. But as the trial court noted, Amy "has a pattern of getting into relationships involving domestic violence" and had been counseled previously about the importance of avoiding such relationships because of the risks they posed to her children. She made little progress on her case plan even outside of the time the couple was in hiding. Julia's decision to drop out of sight with Jack simply confirmed her inability or unwillingness to make significant progress in these areas.

9. Julia contends that the superior court erred in finding under the clear and convincing evidence standard that OCS made reasonable efforts toward her reunification with Amy. In its findings, the court noted OCS's development of case plans to address issues of substance abuse, parenting, and mental health; its referrals for services, including substance abuse assessments, testing, and treatment; its offers of visitation; and its attempted trial home visit with her older child, Jackson. Julia asserts that OCS's efforts were minimal after it removed Amy from her custody because it had already decided that it was going to move to terminate her parental rights. But at the

---

[12] *Julia D.*, 2013 WL 5314609 at *3.

time of Amy's removal OCS was already in the process of terminating Julia's parental rights to Jackson, and an evaluation of the reasonableness of OCS's efforts must encompass that recent history.[13] Besides, the court properly took into account the fact that both Julia and Jack were out of contact with OCS during a critical four-month period, during which OCS continued to try to locate them.[14] There is no clear error in the superior court's finding of reasonable efforts.

10. Julia also contends that the trial court erred in finding probable cause to believe that Amy was a child in need of aid for purposes of allowing OCS to take temporary custody.[15] But the court's later finding in the termination proceeding that Amy was a child in need of aid was made under the higher "clear and convincing" standard of proof pursuant to AS 47.10.088. This later finding moots Julia's challenge to the finding of probable cause.[16]

11. Finally, Julia contends that the trial court erred when it approved Amy's placement with foster parents without considering Amy's maternal grandparents as a placement preference under AS 47.14.100(3)(e). But this appeal is from the superior

---

[13] *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 953 (Alaska 2013) (noting that the reasonableness of OCS's efforts is viewed in light of the entire history of OCS's services to the family).

[14] *Id.* (noting that the question of whether OCS made reasonable efforts involves looking at the parent's level of cooperation).

[15] Before authorizing OCS to take emergency custody of a child, a trial court must find probable cause to believe that the child has been subjected to conduct or conditions described in AS 47.10.011. *See* AS 47.10.142(e), .990(4).

[16] *See Alyssa B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 165 P.3d 605, 610 (Alaska 2007) ("Alyssa's claims concerning the department's decision to take custody of Jaclyn and the probable cause hearing are moot in light of the superior court's later decision adjudicating Jaclyn a child in need of aid.").

court's ultimate decision to terminate Julia's parental rights, a decision which superceded earlier placement orders.[17] Julia could have sought timely review of earlier placement decisions when they were made, but she did not do so; the superior court's termination order now renders those earlier placement issues moot.[18]

12. The superior court's order terminating Julia's parental rights to her daughter Amy is AFFIRMED.

---

[17] *Erica A. v. State, Dep't of Health & Social Servs., Div. of Family & Youth Servs.*, 66 P.3d 1, 10 (Alaska 2003) (citing AS 47.10.088; CINA Rule 18).

[18] *Id.*