NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| BRADLEY S., | ) |
| | ) Supreme Court Nos. S-17729/17764 |
| Appellant, | ) (Consolidated) |
| | ) |
| v. | ) Superior Court Nos. 3PA-18-00069/ |
| | ) 00070/00071/00072/00073 CN |
| STATE OF ALASKA, DEPARTMENT | ) (Consolidated) |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES, | ) MEMORANDUM OPINION |
| | ) AND JUDGMENT* |
| Appellee. | ) |
| | ) No. 1805 – December 2, 2020 |
| ASHLEIGH S., | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF ALASKA, DEPARTMENT | ) |
| OF HEALTH & SOCIAL SERVICES, | ) |
| OFFICE OF CHILDREN'S SERVICES, | ) |
| | ) |
| Appellee. | ) |
| | ) |

Appeals from the Superior Court of the State of Alaska, Third
Judicial District, Palmer, John C. Cagle, Judge.

Appearances: Dan S. Bair, Anchorage, for Appellant
Bradley S. Jason A. Weiner, Gazewood & Weiner, P.C.,

---

\*     Entered under Alaska Appellate Rule 214.

Fairbanks, for Appellant Ashleigh S. Lael A. Harrison, Assistant Attorney General, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Borghesan, Justice, not participating.]

## I. INTRODUCTION

The Office of Children's Services (OCS) removed five children from their parents' custody. The superior court terminated parental rights, finding the children in need of aid due to their parents' substance abuse, neglect, and abandonment. The parents appeal the termination of their rights to the three older children, arguing OCS did not make active or reasonable efforts to reunify the family and the finding of abandonment was improper.

We conclude the record supports the superior court's findings that OCS made the "active efforts" required by the Indian Child Welfare Act (ICWA) and "reasonable efforts" required by the Child in Need of Aid (CINA) statute to reunify the family. Because only one basis is needed to support a finding that a child is in need of aid, and the parents do not challenge the court's findings on substance abuse or neglect, we do not reach the abandonment argument. We therefore affirm.

## II. FACTS AND PROCEEDINGS

### A. The Children's Initial Removal From Their Parents' Home

Bradley and Ashleigh S.[1] have five children together, infant twins and three older children. The older three are the subject of this appeal.[2] Bradley is a member of

---

[1] We use pseudonyms to protect the family's privacy.

[2] The parents do not challenge the termination of their parental rights to the twins. Throughout the life of the case, Bradley has consistently expressed a desire that the twins be adopted, and Ashleigh has repeatedly stated she was open to the twins being

the Qagan Tayagungin Tribe (the Tribe), and the children are Indian children as defined in ICWA.[3]

OCS had removed the three older children from their home in 2014 while their parents completed substance abuse treatment, but the family reunited in 2015. Over the next three years, OCS received 16 reports of substance abuse and neglect. The parents were consistently "uncooperative or minimally cooperative with [OCS]" and would not let investigating caseworkers into their residence.

In March 2018 the twins were born at home, several weeks premature; they were transported to a newborn intensive care unit, where they tested positive for amphetamine. OCS assumed emergency custody of all five children. Alaska State Troopers accompanied OCS to the home to remove the three older children. The parents resisted the removal; Bradley grabbed a trooper's neck and was arrested for assault in the fourth degree.

During this initial removal, the OCS caseworker observed that the house was "extremely uncleanly," the children had no clean clothing, and drug paraphernalia was in plain view.

Of the three older children, two later tested positive for methamphetamine, and all three were diagnosed with developmental or emotional and mental health issues. The three older children were placed in a foster home together, while the twins were placed with a different family due to their medical needs.

## B. The Case Plans And OCS's Attempts At Communication

After the children's removal, OCS drafted case plans for Bradley and Ashleigh in April 2018, although the plans contained little information because, as OCS

---

adopted.

[3]     *See* 25 U.S.C. § 1903(4) (2018).

repeatedly noted, "the parents have not engaged with OCS at this time." Neither parent was present at OCS's initial case conference.

The initial case plans for Ashleigh and Bradley were largely identical. Both parents were to "complete a substance abuse assessment and follow all treatment recommendations"; attend visitation with the children; complete random urinalysis (UA) tests; attend domestic violence support groups and parenting classes; and "maintain regular monthly contact with [their] OCS worker and provide any new contact information." Ashleigh was also directed to work with a "parent navigator" for additional support in parenting and case management. The plan indicated that OCS would support the parents by providing referrals, requesting funding, and making travel arrangements on their behalf. The OCS caseworker was also to "maintain monthly contact" with the parents.

Beginning in March 2018, OCS made repeated attempts to contact the parents but again noted the parents were "very difficult to reach" and "minimally engaged" with their case planning. The caseworker sent texts, emails,[4] and a certified letter; left voice mails; and attempted an in-person visit.[5] OCS also contacted the Tribe, which remained involved throughout the case and made several attempts to contact and work with the parents.

---

[4] When initially providing the email address, Ashleigh stated she was "not able to check [email] as frequently as [she]'d like to." When Ashleigh informed OCS that she could not receive Multimedia Messaging Service (MMS) text messages, OCS began sending simpler Short Message Service (SMS) messages to which she was able to respond. Bradley also provided his phone number and email address and later acknowledged that he was receiving emails.

[5] The caseworker found "a locked gate, and No Trespassing signs posted, and a long driveway to which the residence was out of sight." Because Bradley had assaulted a state trooper during the children's initial removal, OCS abandoned the effort due to "safety concerns."

After "numerous scheduled, cancelled and no show appointments," the parents had an initial meeting with OCS in July 2018, four months after the children were removed. Even then the parents arrived late and left early. Both parents agreed to complete substance abuse assessments and received walk-in referrals. The caseworker reminded the parents to attend random UA tests, which had been set up since March; provided a written schedule of visitations with the children; and reminded both parents that they had transportation vouchers.

By the time OCS filed its pre-disposition report at the end of July 2018, the parents had "not engaged in meaningful contact with [OCS] or completed services as outlined in their case plan." In its report, OCS reiterated the parents' urgent need to complete substance abuse assessments and "comply with recommended treatment in order to maintain a sober and stable lifestyle," engage in a family violence intervention program, and attend parenting classes. It also stated that both Ashleigh and Bradley must complete psychological assessments "because of substance abuse being an ongoing historical and apparently current concern for the parents."[6] However, OCS concluded that due to the parents' "minimal engagement," there was no "opportunity to complete a personalized case plan to identify specific services and supports needed." OCS did not provide direct referrals for psychological assessment, an omission which it attributed to "the lack of engagement and being able to sit down with [the parents] and . . . go over everything on the case plan."

---

[6] OCS separately noted that Bradley was struggling with the recent loss of several close friends. He was reportedly "extremely depressed, a changed person, [and] ha[d] lost a significant amount of weight." Bradley stated that he had "shut down emotionally"; Ashleigh described him as "need[ing] help and support related to loss and grief."

The only case plan requirement both parents completed was the domestic violence (DV) assessment. The assessor recommended that both parents receive mental health services and substance abuse treatment and participate in a family violence intervention program. Bradley's assessment specifically noted that "[t]he need to address [the substance abuse] issue is paramount in addressing any other issue." But Bradley never completed a substance abuse assessment, and neither parent appeared for a single required UA. When Ashleigh eventually underwent a substance abuse assessment, she was recommended for inpatient treatment. She reported starting an application for that treatment but apparently never completed it.

OCS also scheduled visits with the children, although the parents' participation was "sporadic and inconsistent." Between March and July 2018, Ashleigh visited the older children three times before a string of no-shows resulted in visitation being canceled; Bradley did not attend any visits during this time period. OCS re-referred the parents to the agency supervising visits after the parents' initial meeting with OCS, but visits were again canceled in early 2019 after several more no-shows.

Both parents were briefly incarcerated in mid-2019 on charges of theft and drug possession; Bradley was also charged with felony assault. Neither parent was apparently able to make calls to the children while incarcerated. After Bradley's release, OCS again arranged visitations, UA tests, a substance abuse assessment, and a DV assessment. Bradley attended three visits with his older children and completed his DV assessment in September 2019, two months before the termination trial, but otherwise failed to follow up on these referrals.

C.    **Termination Of Parental Rights**

After a permanency hearing in March 2019 OCS had changed its permanency goal for the children to "adoption" instead of "reunification" due to the parents' lack of progress on their case plan. The next month OCS filed a petition for

termination of parental rights based primarily on Ashleigh's and Bradley's substance abuse and neglect of the children.

Bradley and Ashleigh did not attend the termination trial in November 2019. They did not contest termination of their parental rights to their infant twins, but only their rights to the three older children. The court heard evidence on the parents' substance abuse; their neglect and abandonment of the children; their continued failure to engage with their case plans or change their problematic conduct; and OCS's efforts to communicate with and support Bradley and Ashleigh.

The superior court issued largely identical orders terminating both Bradley's and Ashleigh's parental rights in February 2020. All five children were found in need of aid under the CINA statutes due to abandonment, neglect, and parental substance abuse.[7] The court concluded that the parents had failed to "remedy the conduct or conditions in the home" that had originally endangered the children; returning them to their parents would place the children "at substantial risk of physical or mental injury"; "termination is in the best interests of the children"; and "continued custody of the [children] by the parent or Indian custodian is likely to result in serious emotional or physical damage to the [children]."

The court also found that OCS had made "active efforts . . . to provide remedial services and rehabilitative programs designed to prevent the breakup of the family" as required by ICWA.[8] These included "offering family contact, transportation assistance, referral for substance abuse assessment, offering random drug testing . . . , referral for anger management/DV assessment, case planning and development, and

---

[7]     *See* AS 47.10.11(1), (9)-(10).

[8]     *See* 25 U.S.C. § 1912(d); 25 C.F.R. § 23.120 (2020).

medical assessments and treatments for the children." The court committed the children to OCS custody for adoption.

On appeal Bradley claims that the superior court erred in finding (1) that "OCS met its obligation of reasonable and active efforts" under CINA and ICWA and (2) that Bradley abandoned the three older children. Ashleigh argues only that OCS failed to make "reasonable efforts" to reunify her with her children as required by the CINA statute. We need only address the first of these claims.

## III.   DISCUSSION

Whether OCS made active efforts under ICWA is a mixed question of law and fact.[9] We review the superior court's factual findings for clear error; whether those findings satisfy ICWA requirements is a question of law which we review de novo.[10]

Prior to terminating parental rights to an Indian child, ICWA requires OCS to "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."[11] We agree with the superior court:  OCS met its "active efforts" obligation.

In general, we find OCS fulfills its "active efforts" obligation under ICWA when it "takes the client through the steps of the plan rather than requiring that the plan be performed on its own."[12]  We review OCS's "involvement in its entirety," and

---

[9]      *See Sam M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 442 P.3d 731, 736 (Alaska 2019).

[10]      *Id*.

[11]      25 U.S.C. § 1912(d); *see also* 25 C.F.R. § 23.120(a).

[12]      *Bill S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 436 P.3d 976, 981 (Alaska 2019) (quoting *Philip J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 314 P.3d 518, 527 (Alaska 2013)).

"inadequate efforts in one period . . . do not render the entirety of [OCS's] efforts inadequate, even when that period lasts for a matter of months."[13]  We recognize that "OCS has discretion in determining what efforts to pursue based on the case plan and the parent's needs."[14]

A parent's willingness to participate in services is also "relevant to the scope of the efforts OCS must provide."[15]  OCS need not continue in active efforts that are clearly futile.[16]  We will consider a "parent's demonstrated lack of willingness to participate in treatment," including any "[f]ailed attempts to contact the parent."[17]  The record before us demonstrates such a lack of willingness on Bradley's part.

## A. OCS's failure to refer Bradley for a psychological evaluation does not change the active-efforts analysis.

On appeal Bradley complains primarily that OCS failed to provide him needed psychological assessments, which he describes as "an important, if not a major, component of reasonably providing services so that the children could be returned to their parents."  He claims this was a necessary first step in addressing his substance abuse disorder, and without a direct referral for such an assessment "he could not move

---

[13]     *Philip J.*, 314 P.3d at 528 (quoting *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1114 (Alaska 2010)).

[14]     *Id*. at 534; *see Sean B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 251 P.3d 330, 338 (Alaska 2011).

[15]     *Casey K. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 311 P.3d 637, 645-46 (Alaska 2013) (quoting *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 432 (Alaska 2012)).

[16]     *Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 433 (Alaska 2015).

[17]     *Id.* at 432-33 (quoting *E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 991 (Alaska 2002)).

forward." Therefore, he argues, OCS failed in its duty to make "affirmative, active, thorough, and timely efforts" to reunite his family as required by ICWA.[18]

But Bradley does not point to any evidence that a psychological evaluation would have enabled him to resolve the substance abuse and parenting problems that led OCS to take custody of the children. Rather, the record suggests what prevented Bradley from moving forward was his unwillingness to engage with the services provided; OCS made active efforts to provide Bradley support services, but despite multiple referrals he never completed a substance abuse assessment or a single UA. He demonstrated an unwillingness to utilize the services provided, and there is no indication that he would have met a direct referral for psychological evaluation with any greater willingness to participate.

Further, OCS maintains "some discretion in determining what efforts to pursue."[19] Bradley and Ashleigh's children were removed due to substance abuse and neglect, not potential psychological disorders. It was thus reasonable for OCS to initially focus on the parents' substance abuse problems before attempting to address others. Indeed, the one assessment Bradley did attend — his domestic violence evaluation — specifically stated: "The need to address [his substance abuse] issue is paramount to addressing any other issue." OCS was justified in focusing its efforts on the parents' substance abuse. Those efforts did not ultimately succeed, but they satisfied OCS's "active efforts" obligations under ICWA.

---

[18]     25 C.F.R. § 23.2 (defining active efforts under ICWA to mean "affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family").

[19]     *Philip J.*, 314 P.3d at 534.

**B.     OCS's failure to provide telephonic assessments or engage with Bradley during his incarceration did not excuse Bradley's lack of participation in his case plan.**

Bradley additionally contends that "OCS failed to provide telephonic options regarding the case plan services," thus undermining its efforts to reunify the family. This argument finds little support in the record, as Bradley failed to take advantage of the telephonic services or transportation arrangements that were offered.

Despite efforts by OCS to arrange telephonic participation, neither parent attended the initial case conference. Neither parent attended the parental-rights termination trial in person or telephonically, even though the court was amenable to telephonic participation. Bradley does not explain why he would have responded differently if provided a telephonic option for his substance abuse assessment. Further, transportation was not an apparent barrier; Bradley dropped Ashleigh off for her DV assessment in February 2019 but then refused to participate himself, and OCS offered him taxi vouchers which he refused to utilize.[20]

Bradley also argues that his "incarceration was an opportunity to engage him" squandered by OCS. But Bradley was incarcerated for only 3 or 4 months, and he does not explain his failure to participate over the other 16 months preceding the termination trial. Even assuming OCS could have done more to engage Bradley during his brief incarceration, it has little impact on our analysis. We consider OCS's efforts as a whole, and its failures during a few weeks or months "do not render the entirety of [its] efforts inadequate."[21]

---

[20]     OCS provided transportation vouchers, but Bradley refused to utilize them because he believed "that using a taxi would make him look bad." Ashleigh expressed willingness to use the vouchers because, according to OCS, she had missed prior visits "due to unreliable transportation and what appeared to be sabotage by [Bradley]."

[21]     *Philip J.*, 314 P.3d at 528.

In sum, OCS made repeated attempts to engage Bradley in his case, providing transportation assistance, family visitation, and referrals for substance abuse treatment and domestic violence counseling. Bradley demonstrated a consistent unwillingness to participate in these services. Given this context, we agree with the superior court: OCS met its "active efforts" obligations under ICWA.[22]

## IV. CONCLUSION

The superior court's judgment is AFFIRMED.

---

[22] Bradley also challenges the court's determination that the children were in need of assistance due to abandonment, but not its findings of neglect or substance abuse. Because any one finding would independently support the termination order, and Bradley challenges only one, this argument is waived and we do not address it. *See* AS 47.10.11. Even assuming Bradley is correct, it could have no impact on the case. *See Alyssa B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 165 P.3d 605, 618 (Alaska 2007).

Ashleigh's claim also fails. AS 47.10.086 requires that OCS "make timely, reasonable efforts" to provide services designed to "enable the safe return of the child to the family home." Where OCS's action satisfies ICWA's "active efforts" requirement, it will also meet CINA's lower "reasonable efforts" standard. *See Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 765 n.31 (Alaska 2009). As we have explained with respect to Bradley, the agency's repeated attempts to contact and engage with both parents constituted "active efforts" under ICWA, and therefore also satisfy the "timely, reasonable efforts" required by the CINA statute.