NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite
a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| MELINDA P., ) | |
| ) | Supreme Court No. S-15244 |
| Appellant, ) | |
| ) | Superior Court Nos. |
| ) | 3PA-11-00129/130/131/132/133 CN |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, ) | AND JUDGMENT* |
| DEPARTMENT OF HEALTH & ) | |
| SOCIAL SERVICES, OFFICE OF ) | No. 1506 – July 2, 2014 |
| CHILDREN'S SERVICES ) | |
| ) | |
| Appellees. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third
Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: Benjamin I. Whipple, Palmer, for Appellant.
Mary Ann Lundquist, Senior Assistant Attorney General,
Fairbanks, and Michael C. Geraghty, Attorney General,
Juneau, for Appellee Office of Children's Services. Margaret
McWilliams, Assistant Public Advocate, Juneau, and Richard
Allen, Public Advocate, Anchorage, for Appellee Guardian
Ad Litem.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and
Bolger, Justices.

---

\*     Entered pursuant to Appellate Rule 214.

Five children were physically and mentally abused for years by their father. Their mother, Melinda P., did little to protect them.[1] The abuse stopped when older children reported it to others; the father was eventually imprisoned. Feeling incapable of caring for the children, Melinda placed them with another family, the Stewards, and Mr. Steward was appointed by the court to be the children's guardian. Several years later the Stewards contacted OCS after Melinda stated her intention to remove the children from their home. The children, all suffering from post-traumatic stress disorder, were afraid of returning to live with Melinda. OCS took them into its custody and continued their placement with the Stewards. OCS worked unsuccessfully to reunite the children with Melinda, then petitioned to terminate her parental rights. The trial court granted the petition, finding that Melinda had neglected the children and had caused them mental injury by failing to protect them from their father's abuse. The trial court found that as of the time of the termination trial Melinda had not accepted fault, acknowledged the seriousness of the abuse her children had suffered, or adequately addressed her own issues in therapy. Melinda appeals. We affirm.

Melinda raises numerous challenges on appeal, but we do not find it necessary to reach them all. We do not reach her challenges to the trial court's grant of temporary custody to OCS or its order adjudicating the children in need of aid (CINA), because the trial court's findings at termination rendered those challenges moot. "We have held that '[a] claim is moot where a decision on the issue is no longer relevant to resolving the litigation, or where it has lost its character as a "present, live controversy," that is, where a party bringing the action would not be entitled to any relief even if he or

---

[1]    Pseudonyms are used throughout to protect the privacy of the parties.

she prevailed.' "[2] In *Alyssa B.*, we held that a parent's challenge to a trial court's finding of probable cause (the basis for granting OCS emergency custody of a child) was moot in light of the trial court's later decision adjudicating the child in need of aid, because the court had to make the same findings at the adjudication stage but subject to the higher standard of a preponderance of the evidence.[3] At the termination trial the court must make the same findings yet again, but by the even stricter standard of clear and convincing evidence.[4] Thus, any error the trial court may have made in its factual findings at the emergency custody or adjudication stages was remedied if the court made proper findings at termination. We therefore review for error only the findings in the trial court's termination order.

We also do not reach Melinda's challenge to the trial court's denial of her request, before termination, to have visits with the children. Because we affirm the order terminating her parental rights, this argument is moot.[5]

Melinda challenges the trial court's decision denying her request to dissolve Mr. Steward's guardianships over the children. The trial court ruled that Melinda lost

---

[2]    *Alyssa B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 165 P.3d 605, 610 n.9 (Alaska 2007) (quoting *Clark v. State, Dep't of Corr.*, 156 P.3d 384, 387 (Alaska 2007)).

[3]    *Id.* at 610. *See* AS 47.10.142(e) (For purposes of emergency custody and temporary placement, "the court shall determine whether probable cause exists for believing the child to be a child in need of aid."); AS 47.10.011 (stating that finding a child to be a child in need of aid is subject to a preponderance of the evidence standard).

[4]    AS 47.10.088(a)(1) (Involuntary termination of parental rights requires a finding by clear and convincing evidence that "the child has been subjected to conduct or conditions described in AS 47.10.011.").

[5]    *See* AS 47.10.084(c) (stating that parents have "residual rights and responsibilities," including reasonable visitation, when "parental rights have not been terminated by court decree").

standing to make that request when her parental rights were terminated. Melinda does not directly challenge that ruling; instead, she argues that the trial court erred by holding the guardianship action in abeyance pending the outcome of the CINA proceedings. She asserts that the guardianship action "had not been stayed, but consolidated." But the trial court issued an order on December 6, 2012, that "all proceedings in the [children's guardianship cases are] stayed pending the resolution of the associated [CINA] cases." Melinda did not seek reconsideration or appellate review of this order, nor does she present any legal argument to support her contention that it constituted plain error. Finally, she does not challenge the foundation of the trial court's decision — its determination that the guardianships were effectively mooted by the court's grant of custody to OCS. We therefore reject Melinda's contention that the trial court erred when it denied her request to terminate the guardianships.

Melinda argues that the trial court abused its discretion by excluding letters that her attorney had written to OCS, offered as evidence of positions she had taken in her relations with OCS. Under the abuse of discretion standard of review, we will reverse an evidentiary ruling only if the error was prejudicial, that is, if in view of the entire record the error must have had a substantial influence on the verdict.[6] We need not consider the merits of Melinda's argument, because she has not shown that she suffered any prejudice from the letters' exclusion. Their relevance to any issue in the case was at most marginal and, as the trial court found, cumulative of Melinda's testimony about her interactions with OCS, which appears to be all that the letters were offered to prove.

Melinda argues that the trial court erred in finding that the children had been subjected to conduct or conditions described in AS 47.10.011 (that is, that they

---

[6]    *Schofield v. City of St. Paul*, 238 P.3d 603, 606 (Alaska 2010).

were children in need of aid).  The trial court found that the children were in need of aid under AS 47.10.011(8) (mental injury or risk of mental injury) and (9) (neglect).  Neglect includes situations where a child's "parent . . . fails to provide the child with adequate food, clothing, shelter, education, medical attention, or other care and control necessary for the child's physical and mental health and development."[7]  When the children arrived at the Stewards' home they could not read and did not know even rudimentary personal hygiene, such as bathing and brushing their teeth.  Evidence established that the children had been punished by having food withheld for days on end and being required to sleep on the floor without covers in cold weather.  These facts clearly support a finding of neglect.[8]  Because we affirm this finding, we need not reach Melinda's challenge to the additional finding that her conduct caused the children to suffer mental injury.[9]

Melinda argues that she remedied any conduct or conditions that placed her children at risk of harm.  She asserts that because she turned her life around she is no longer a danger to the children.  She points to programs and activities she undertook that

---

[7]    AS 47.10.014.

[8]    Melinda argues that the present tense of the statutory term "fails to provide" means that, unlike other subsections of AS 47.10.011, a trial court cannot base a termination order on neglect under subsection (9) unless it finds that the neglect happened close in time to the termination trial, or at least close in time to the adjudication hearing.  This argument is incorrect.  *See A.H. v. State, Dep't of Health & Soc. Servs.*, 10 P.3d 1156, 1161 (Alaska 2000) ("[T]he inquiry regarding CINA status at a termination hearing involves 'all evidence of the parent's pre-termination hearing conduct, including evidence of parental conduct predating the CINA adjudication.'  Thus, the statute only requires a finding that the child 'has been' subjected to neglect." (quoting *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 209 (Alaska 2000)) (footnote omitted)).

[9]    *See Alyssa B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 165 P.3d 605, 618 (Alaska 2007);  *Rick P. v. State, OCS*, 109 P.3d 950, 956 (Alaska 2005).

were designed to help her achieve balance in her life. She argues that the trial court's finding that she continues to pose a risk to the children "unreasonably minimizes this remarkable history." But Melinda's argument ignores the children's concerns that she has never acknowledged the abuse they suffered and that she continues to minimize its effect on them. She ignores the uniform recommendations of the children's therapists that the children not have any contact with her. Alaska Statute 47.10.088(b) allows a trial court to consider "the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs; . . . the harm caused to the child; . . . [and] the history of conduct or conditions created by the parent" in determining whether a parent has remedied harmful conduct or conditions. These factors support the trial court's finding here that Melinda has not remedied the conduct or conditions that placed her children at risk of harm. The trial court did not clearly err in making the finding.

Melinda also argues that OCS did not make reasonable efforts to provide her with services designed to allow the safe return of the children to her custody. She challenges OCS's efforts on several fronts. First, she argues that because visitation was her "only road to reunification" and she "in good faith readied herself for family therapy," OCS should have allowed her to have contact with the children. But OCS was required to be guided as well by the recommendations of the children's therapists and evaluating psychiatrists, who uniformly believed that the children's mental health depended on having no contact with Melinda in the foreseeable future.

Next, Melinda argues that OCS "unreasonably delayed finding counselors for the children" and "failed to implement the court's directives on counseling." These arguments are not supported by the record. The trial court directed OCS to arrange counseling for the children in February 2012. The children went out of the state on an OCS-approved six-week trip with the Stewards beginning in April 2012. On their return OCS and the guardians arranged for psychiatric evaluations, which resulted in

recommendations for further therapy. The children began therapy at least as early as August 2012. While OCS might have acted more quickly, we cannot conclude on the basis of this record that there was an unreasonable delay.

In challenging OCS's efforts Melinda also argues that OCS allowed the Stewards to interfere with her relationship with the children, that OCS should not have allowed the children to be present at court proceedings, that the children's guardian ad litem should not have asked the children their preferences about placement, and that OCS "failed to shield the children by failing to obtain neutral mental health evaluations of the children by a non-treating professional." We find no merit to these arguments.

Finally, Melinda argues that the termination of her parental rights is not in the children's best interests. The trial court found otherwise. Its finding is supported by evidence that

> [t]he children have been placed with loving guardians and are very bonded to them and not to their mother. The children hold a strong fear and distrust of their mother. . . . They need the stability of a permanent home and a safe and nurturing environment in order to have a chance to succeed in life.

The trial court's finding is not clearly erroneous.

For the foregoing reasons, the trial court's order terminating Melinda's parental rights to her children is AFFIRMED.