NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JASPER R., | ) | |
| | ) | Supreme Court No. S-16437 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-14-00172 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | No. 1630 – May 24, 2017 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Megan R. Webb, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Margaret Paton Walsh, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.    INTRODUCTION

A father challenges a trial court's decision terminating his parental rights to his child. Because the court correctly applied the law and the challenged finding is not clearly erroneous, we affirm the termination of the father's parental rights.

---

\*      Entered under Alaska Appellate Rule 214.

## II.    BACKGROUND

Jasper R.[1] has a child who is an "Indian child"[2] as defined by the Indian Child Welfare Act of 1978 (ICWA).[3] The State of Alaska, Office of Children's Services (OCS) filed an emergency petition in May 2014 to adjudicate Jasper's child as a child in need of aid and to assume temporary custody. In October 2015 OCS filed a petition to terminate Jasper's parental rights and a termination trial was held in July 2016. Jasper was either incarcerated or on probation for the entirety of the intervening period.

The standards for terminating parental rights are provided in Alaska Child in Need of Aid (CINA) Rule 18; that rule is governed by Alaska Statutes and ICWA requirements that apply when terminating parental rights to an Indian child.[4] The child's

---

[1]    A pseudonym is used for privacy.

[2]    *See* 25 U.S.C. § 1903(4) (2012).

[3]    25 U.S.C. §§ 1901-1963. ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." 25 U.S.C. § 1902.

[4]    CINA Rule 18(c) (referencing requirements in AS 47.10.011, 47.10.080(o), and 47.10.086 and providing, in the case of Indian children, protocols that comport with ICWA, 25 U.S.C. § 1912(d) and (f)).

Under Alaska CINA Rule 18(c) parental rights to an Indian child may be terminated at trial only if OCS makes certain showings:

OCS must show by clear and convincing evidence that: (1) the child has been subjected to conduct or conditions enumerated in AS 47.10.011 (relating to abuse, neglect, mental illness, and other harmful conditions); (2) the parent has not remedied the conduct or conditions that place the child at substantial risk of harm or has failed within a reasonable time to remedy the conduct or conditions so that the child would be at substantial risk of physical or mental injury if returned to the parent; and (3) active efforts have been made to provide remedial services and rehabilitative programs

(continued...)

mother voluntarily relinquished her parental rights during trial. At the close of trial the superior court found that OCS had met its burden of proof on all relevant findings and that the child was in need of aid under AS 47.10.011(2) (Jasper's incarceration) and (11) (Jasper's mental illness), and the court terminated Jasper's parental rights. Jasper raises two points on appeal, arguing that the court erred by: (1) relying on the mother's adjudication stipulation to establish an element of the child in need of aid determination under AS 47.10.011(2); and (2) finding OCS made active efforts to reunify his family.

## III. STANDARD OF REVIEW

"[W]hether OCS has made active efforts as required by ICWA is a mixed question of law and fact; [we] review[] the questions of law de novo."[5] "In CINA cases, we review the superior court's factual findings for clear error."[6] "Findings are clearly erroneous if, after reviewing the record in the light most favorable to the prevailing party, we are left with 'a definite and firm conviction that a mistake has been made.' "[7]

---

[4]     (...continued)
designed to prevent the breakup of the Indian family;

OCS must show beyond a reasonable doubt, including qualified expert testimony, that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child; and

OCS must show by a preponderance of the evidence that the child's best interests would be served by termination of parental rights.

[5]     *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011) (citing *Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1018 (Alaska 2009)).

[6]     *Id.* at 1103 (citing *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

[7]     *Maisy W.*, 175 P.3d at 1267 (quoting *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004)).

## IV. DISCUSSION

### A. Child In Need Of Aid Finding

The trial court found that Jasper's child was in need of aid under both AS 47.10.011(2) (Jasper's incarceration) and (11) (Jasper's mental illness). Because either finding alone adequately supports the termination decision and Jasper does not challenge the court's child in need of aid finding under subsection (11), we do not reach his point on appeal concerning the court's use of the mother's adjudication stipulation under subsection (2).[8]

### B. Active Efforts Finding

"Before terminating parental rights to an Indian child, the trial court must find by clear and convincing evidence that OCS made active, but unsuccessful, efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family."[9] "Our concern is not with whether the State's efforts were ideal,

---

[8] *See Rick P. v. State, OCS*, 109 P.3d 950, 956 (Alaska 2005) ("[O]ur determination that the mental injury finding was not erroneous makes it unnecessary to consider [the father's] challenges to [findings under other subsections of AS 47.10.011]."); *see also Alyssa B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 165 P.3d 605, 618 (Alaska 2007) ("Because either finding alone would support the termination order and because [the mother] does not challenge the court's finding of abandonment, her challenge to the mental illness finding has no impact on the outcome of the case.").

Jasper contends that an erroneous finding under subsection (2) might detrimentally impact him in future collateral proceedings, but he acknowledges our holding in *Peter A. v. State, Department of Health & Social Services, Office of Children's Services* that adverse collateral consequences are unlikely because CINA records are sealed and the proceedings are confidential. 146 P.3d 991, 996 (Alaska 2006). We decline Jasper's request that we revisit this holding.

[9] *Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 432 (Alaska 2015) (first citing 25 U.S.C. § 1912(d); then citing CINA

(continued...)

but with whether they crossed the threshold between passive and active efforts."[10] Active efforts must promote reunification and target "the particular family needs that caused the child to be in need of aid."[11]

"In determining whether OCS made active efforts, the trial court may consider all services provided during the family's involvement with OCS . . . ."[12] "OCS's interactions with the non-incarcerated parent may be considered an 'important aspect of the [S]tate's active efforts to keep the family together.' "[13] But "[t]he parent's willingness to cooperate is [also] relevant to determining whether [OCS] has met its active efforts burden, and a parent's 'incarceration is a significant factor' that 'significantly affects the scope of the active efforts that [OCS] must make to satisfy the statutory requirement.' "[14] "[A]n analysis of the [S]tate's active efforts is not limited to

**9** (...continued)
Rule 18(c)(2); and then citing *Christopher C. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 303 P.3d 465, 476 (Alaska 2013)).

**10** *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 272 (Alaska 2011) (citing *Dale H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 235 P.3d 203, 213 (Alaska 2010)).

**11** *Kyle S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 1262, 1269 (Alaska 2013) (citing *Burke P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 162 P.3d 1239, 1245 (Alaska 2007)).

**12** *Sylvia L.*, 343 P.3d at 432 (citing *Maisy W.*, 175 P.3d at 1268-69).

**13** *Doe v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 272 P.3d 1014, 1021 (Alaska 2012) (alteration in original) (quoting *Dashiell R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 222 P.3d 841, 850 (Alaska 2009)).

**14** *Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 763 (Alaska 2009) (quoting *A.A. v. State, Dep't of Family & Youth Servs.*, (continued...)

efforts by OCS; programs offered by the Department of Corrections are also considered part of the [S]tate's efforts";[15] a parole officer's efforts can likewise be considered.[16]

Jasper argues that the record does not support the trial court's finding that OCS made active efforts to reunify him with his child.[17]  But we conclude it does.

The trial court found Jasper had been incarcerated during much of the period OCS was attempting to provide rehabilitative services for his family, and it noted an OCS worker's testimony that she was unable to meet Jasper in jail because of Department of Corrections (DOC) restrictions.  It was undisputed that when Jasper was

---

**14**     (...continued)
982 P.2d 256, 261 (Alaska 1999)).

**15**     *Dashiell R.*, 222 P.3d at 849 (first citing *Frank E. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 77 P.3d 715, 720-21 (Alaska 2003); then citing *T.F. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 26 P.3d 1089, 1096 (Alaska 2001)).

**16**     *Jon S.*, 212 P.3d at 765.

**17**     Jasper asks us to consider the "active efforts" definition contained in the new Bureau of Indian Affairs regulation, which became effective in December 2016. 25 C.F.R. § 23.2 (2016).  This new definition potentially would affect the scope of OCS's duty to provide rehabilitative services; Jasper's request thus requires us to determine whether the trial court made its active efforts finding under the correct legal framework.  Whether the trial court correctly defined OCS's duty presents a question of law we review de novo.  *See Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1111 (Alaska 2010) ("We review de novo whether the trial court's finding that active efforts were made failed to comport with ICWA requirements." (citing *Sandy B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 216 P.3d 1180, 1186 (Alaska 2009))).

Jasper concedes that the rule was not binding on the trial court, and we decline here to evaluate OCS's efforts under that standard.  "We therefore decide this case based on our existing precedent and without reference to the new . . . regulations." *Victor B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, No. S-16237, 2016 WL 6915519, at *6 n.23 (Alaska Nov. 23, 2016).

not in jail OCS "did not know where he was and had no telephone number, email, or physical address," despite a court order requiring him to "work with OCS in the development of a case plan and . . . participate in family support services." The court found that when Jasper was incarcerated DOC attempted to provide some services as well. Finally, the court found that OCS attempted to provide a number of services for the mother, including "substance abuse assessments, mental health assessment, and family contact," and that "[h]ad th[o]se efforts been successful, there would be no need to address [Jasper's] parental rights."

Our review of the record finds support for the trial court's findings. When OCS first became involved in May 2014 Jasper was not only incarcerated but in punitive segregation due to his violent behavior in jail. He was able to attend a temporary custody hearing for his son in early June, but returned to punitive segregation shortly thereafter as a consequence of continued disruptive behavior. He appears to have been released from custody in late June or early July, but failed to report to his probation officer and was eventually put on abscond status. He remained out of contact with his probation officer, OCS, and his own attorney until he was arrested in December. During this period OCS developed a case plan and provided it to Jasper's attorney; Jasper was not directly provided a copy, presumably because, as documented at the time, he could not be located.

From December 2014 to mid-June 2015 Jasper was arrested three times and incarcerated for approximately four months. When Jasper was not incarcerated, his probation officer secured for him both transitional housing and the assistance of a non-profit group dedicated to prisoner re-entry. But Jasper's participation in those programs was terminated after he consistently failed to attend. When Jasper was incarcerated during this period he was apparently placed once in punitive segregation for refusing to comply with staff orders, and twice on suicide precaution. When in administrative

segregation he was not able to participate in rehabilitative programs; when on suicide precaution he could not participate in programs and he had visitor and telephone restrictions. It is unclear how long he was on suicide precaution on the first occasion; he was taken off precaution on the second occasion after he told mental health staff he was just having a disagreement with prison staff that had since been resolved.

After Jasper was released from jail in June 2015 his probation officer told him to obtain services at Anchorage Community Mental Health (ACMH). But Jasper did not obtain those services; instead he was again arrested a few days later. Between mid-June 2015 and April 2016 Jasper was in and out of jail and was incarcerated at the time of the termination trial. In July 2015 he was again placed on suicide precaution; it appears he was taken off after he adamantly denied suicidal ideation to mental health staff and told them he had only made the suicidal statements because he thought it might help him get released. He was also assigned to nearly 50 days of punitive segregation for a variety of violent and disruptive behaviors.[18]

Jasper's failure to maintain contact, his refusal to cooperate, and his near constant movement in and out of prison and through varying levels of administrative and punitive segregation render OCS's efforts active under the circumstances. Courts reviewing OCS's efforts in ICWA cases may consider a parent's refusal to cooperate.[19]

---

[18]    It is not clear from the record whether Jasper actually served all of those days. It appears he was released from custody on the day his punitive segregation was scheduled to commence, but he was again arrested and returned to custody two days later. He was put on suicide precaution on the day he was returned to custody, and it is not clear how long he remained on suicide precaution or whether he was subsequently required to complete his assigned punitive segregation.

[19]    *N.A. v. State, DFYS*, 19 P.3d 597, 603 (Alaska 2001) (citing *A.M. v. State*, 945 P.2d 296, 306 (Alaska 1997); *A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 262-63 (Alaska 1999)).

We have found efforts to be active when OCS's efforts consisted largely of failed contact attempts rather than services because "evasive, combative conduct rendered provision of services practically impossible."[20] Jasper criticizes OCS's efforts as insufficient because caseworkers failed to track him down either by contacting local shelters or by registering with a victim notification network that would have automatically contacted them whenever he was released from prison. But we have yet to hold, and decline to do so here, that active efforts include an obligation to conduct searches of local shelters for parents who do not have regular points of contact.[21]

We have affirmed a trial court finding that a father's "actions frustrated the [S]tate's efforts" where his caseworker "connected him with . . . a housing program, but he did not attempt to follow up."[22] Here the probation officer attempted to arrange transitional housing and re-entry assistance, but Jasper chose not to take advantage of those opportunities. Jasper argues that the June 2015 referral to ACMH for mental health treatment constituted only a passive effort, not an active one, because his probation officer did not provide any further assistance in actually obtaining those services. But it is not clear what further assistance could or should have been provided. Jasper had obtained a mental health evaluation at ACMH only three months earlier, so it appears transport was not an issue. And ACMH staff had informed Jasper's probation officer

---

[20] *E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 990 (Alaska 2002).

[21] And when a parent is also actively absconding from parole or probation supervision, it seems that any contact efforts would be futile. *Cf. T.F. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 26 P.3d 1089, 1093-94 (Alaska 2001) (holding OCS met its active efforts obligation when father absconded from custody and made no attempt at contact).

[22] *Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1022 (Alaska 2009).

they were eager to provide further assistance. It appears from the record that Jasper could have obtained additional help without major obstacle; that he did not do so seems less a consequence of his probation officer's allegedly insufficient efforts and more a result of Jasper's re-arrest three days later.

Jasper also argues that the "efforts provided to [the mother] do not compensate for the almost total absence of efforts made toward" him. But Jasper does not dispute that OCS offered the mother services including "[s]ubstance abuse assessment and treatments, mental health services, parenting classes, family contact," and "bus passes." We have explained that "OCS's active efforts toward a non-incarcerated parent are important because if the children are able to stay with the non-incarcerated parent, it is unlikely the incarcerated parent's rights will be terminated."[23] Evidence of services provided to the mother supports the trial court's active efforts finding here.

The trial court ultimately found "clear and convincing evidence that active efforts to provide remedial services and rehabilitative programs have been made." Given Jasper's continued failure to cooperate with OCS, the record supports this finding. Accordingly, we conclude the trial court did not clearly err in determining that OCS made the required, but unsuccessful, active efforts to reunify Jasper's family.

V. **CONCLUSION**

We AFFIRM the termination of Jasper's parental rights.

---

[23]     *Claudio P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 860, 866 (Alaska 2013) (quoting *Doe v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 272 P.3d 1014, 1021 (Alaska 2012)) (citing *Dashiell R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 222 P.3d 841, 850 (Alaska 2009)). OCS also provided services to the mother after previously taking custody of the child in 2011, when it successfully worked with her to complete a case plan and reunify the family before the child was again removed in the current proceedings.